## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GUAM MEMORIAL HOSPITAL AUTHORITY, for itself and its Custodian of Records,<br><br>Petitioner,<br><br>vs.<br><br>ATTORNEY GENERAL OF GUAM, on behalf of himself, his office, and a Grand Jury,<br><br>Respondent. | SPECIAL PROCEEDINGS NO. SP0025-24<br><br>**DECISION AND ORDER**<br>Re: *Petitioner's Motion to Quash* Subpoena Duces Tecum **AND** *Respondent's Motion for Court Order Directing Witness to Appear and Furnish Records, Documents and Papers to the Grand Jury* |

This matter came before the Honorable Arthur R. Barcinas on May 15, 2024 for a hearing upon Petitioner Guam Memorial Hospital Authority's ("GMHA") Motion to Quash *Subpoena Duces Tecum* ("Motion to Quash") and Respondent Attorney General of Guam's ("OAG") Motion for Court Order Directing Witness to Appear and Furnish Records, Documents and Papers to the Grand Jury ("Motion to Direct"). Attorney Jordan Pauluhn appeared on behalf of GMHA, and Assistant Attorney General ("AAG") Lewis Harley appeared on behalf of the OAG.

### BACKGROUND

#### I.    Motion to Quash

On or about January 30 or 31, 2024, GMHA received a subpoena *duces tecum* dated January 30, 2024, seeking for GMHA to provide a series of documents to the grand jury as follows:

- Industrial hygiene reports on GMHA mold inspection;

- Employment records and the daily availability of OB/Gyn doctors at GMHA during the defined timeframe;

- Employment documents, resume, education, and supporting documents of GMH administrator/CEO;

- Recent procurement contracts, emails, records and other documents regarding GMHA's HVAC units, supplies, and participating vendors;

- Procurement contracts, emails, records and other documents regarding the lacking medications, medical supplies, and equipment, including "Troponin" for heart attack patients;

- Any documents regarding concerns and complaints from GMHA employees and patients regarding mold exposure, safety concerns, pest control, and inadequate infrastructure and resources; and

- All environmental studies and reports regarding mold at GMHA.

Mot. to Quash, Ex. A. On February 14, 2024, GMHA filed the Motion to Quash, arguing that the power of grand juries in Guam is limited to inquiring about felonies and related misdemeanors, and does not extend to civil matters; and that sovereign immunity limits a grand jury's power to subpoena government agencies without an express waiver by the Legislature.

On March 14, 2024, the OAG filed its Response to the Motion to Quash, arguing that GMHA does not have standing to challenge a subpoena issued by the grand jury; that GMHA improperly conflates the grand jury with the Attorney General; that the grand jury has broad power to investigate on the mere suspicion that a law is being violated, or to obtain assurance that the law is not being violated, and the grand jury is investigating potential violations of criminal codes by GMHA; that GMHA is not entitled to shield itself from a grand jury subpoena through reliance on sovereign immunity; and that the grand jury subpoena is not defective because AAG Harley was authorized to execute the subpoena on behalf of the AG.

On March 28, 2024, GMHA filed its Reply in Support of the Motion to Quash, arguing that any person or party receiving a subpoena has standing to move to quash or to seek a protective order; that the motivations of the AG are always relevant when he or an AAG signs and serves a subpoena; that the AG's discussion of the powers of a grand jury fails to discuss statutory limits on the grand jury's jurisdiction; that sovereign immunity is available to government instrumentalities in all judicial proceedings; and that the grand jury subpoena is defective because it is issued by one grand jury for the appearance before another, and because it does not bear the signature of the AG or a judge of the Superior Court.

## II.    **Motion to Direct**

On February 16, 2024, the OAG filed the Motion to Direct, which was ostensibly in response to the Motion to Quash, but directed GMHA's Custodian of Records to appear and furnish before the grand jury different documents than those in the January 30, 2024 subpoena, i.e., all documents relating to the contract between GMHA and Medhealth Solutions. In the Motion to Direct, the OAG stated that "[t]he People further contends[sic] that the witness has no constitutional privilege to refuse to produce such records, documents and papers as demanded by the Grand Jury." Mot. to Direct, at 3. The OAG further acknowledged the Motion to Quash, but stated that "[t]here has been no motion to stay the compelling of the custodian of records to appear before the Grand Jury or for that matter seeking the enforcement of the January 30, 2024 Grand Jury Subpoena Duces Tecum." *Id.*, at 4-5. The OAG added that, for each day of noncompliance with the subpoena *duces tecum*, GMHA would be assessed a sanction of $1,000.00, plus reasonable attorney's fees, pursuant to Guam Local Rules GR 2.1.

On March 15, 2024, GMHA filed its Response to the Motion to Direct, arguing again that sovereign immunity bars the enforcement of grand jury subpoenas against GMHA; that no subpoena was served on GMHA regarding the Medhealth Solutions contract, and thus the Motion to Direct is in violation of GMHA's due process right to service of process; that the OAG seeks monetary sanctions and attorney's fees not available under court rules or Guam law; and that the

individual that the OAG seeks to compel does not work for GMHA. The AG did not file a Reply in support of the Motion to Direct.

On May 15, 2024, the Court heard arguments on both motions, and took both matters under advisement.

## DISCUSSION

The U.S. Supreme Court has held that the investigative powers of a grand jury are extremely broad. "The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *U.S. v. R. Enterprises, Inc.,* 498 U.S. 292, 297 (1991). "As a necessary consequence of that investigatory function, the grand jury paints with a broad brush." *Id.* "Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings." *U.S. v. Calandra,* 414 U.S. 338, 343-44 (1974). "The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *Id.* Thus, a grand jury subpoena may call for a wide array of documents without being constrained by the evidentiary rules that will govern at trial. *R. Enterprises,* 498 U.S. at 298.

The U.S. Supreme Court and the Guam Supreme Court have further found that there is no threshold showing of suspicion required before a grand jury can exercise the above powers; the grand jury. "Unlike a court, whose jurisdiction is predicated upon a specific case or controversy, the grand jury can investigate merely on the suspicion that the law is being violated, or even because it wants assurance that it is not." *People v. San Nicolas,* 2016 Guam 21 ¶ 15, n.7 (quoting *U.S. v. Morton Salt Co.,* 338 U.S. 632, 642-43 (1950)). The fact that a grand jury may or may not already have information requested in the subpoena is not a reason to quash; "[t]he grand jury is entitled to determine the depth of its investigation." *U.S. v. Doe Corp.,* 59 F.4th 301, 306 (7th Cir. 2023). "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within

the legitimate scope of its authority," and therefore, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *R. Enterprises*, 498 U.S. at 300-01. "[T]he challenging party's unenviable task is to seek to persuade the court that the subpoena that has been served on [him or her] could not possibly serve any investigative purpose that the grand jury could legitimately be pursuing." *Id.*

Under Guam law governing grand jury subpoenas, "[a] subpoena requiring the attendance of a witness before the grand jury may be signed and issued by the Attorney General, or, upon request of the grand jury, by any judge of the Superior Court, in support of the prosecution, for those witnesses whose testimony, in his opinion, is material in an investigation before the grand jury...." 8 GCA § 75.45(a). In Guam, the grand jury is "summoned by the court and sworn to inquire into felonies and any related misdemeanors triable by the court." 8 GCA § 50.10(a). A subpoena may be quashed or modified "if compliance would be unreasonable or oppressive." 8 GCA § 75.20.

## I.     Motion to Quash Subpoena *Duces Tecum*

### A.     The power of grand juries in Guam is limited to inquiring about felonies and related misdemeanors, but the Court cannot make presumptions about the grand jury's ultimate goal in this matter.

GMHA first argues that, while it acknowledges the broad range of the grand jury's investigative power, a party is entitled to seek an injunction against a grand jury subpoena where it is demonstrated that compliance is unreasonable. Mot., at 4 (citing *R. Enters., Inc.*, 498 U.S. at 301). GMHA argues that a grand jury subpoena may be set aside for various improper purposes, including overbreadth, harassment and prosecutorial abuse, and compelling witnesses to private interviews with government agents. *Id.* (citing *In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1089 (9th Cir. 2016); *In re Grand Jury Proceedings*, 33 F.3d 1060, 1063 (9th Cir. 1994); *U.S. v. Waddington*, 233 F.3d 1067, 1075 (8th Cir. 2000)). GMHA asserts that, while the rules

governing secrecy of the grand jury would ordinarily make it difficult for GMHA to determine if the OAG issued the subpoena for an improper purpose, Attorney General ("AG") Douglas Moylan has made numerous public statements to media outlets that the purpose of his investigation is to determine whether the hospital is unsafe for patients, so that he may subsequently seek to have a federal receivership imposed on GMH. Mot., at 5 (citing Joe Taitano II, *AG: GMH investigated for 'dangerous conditions', receivership could be sought*, Pacific Daily News (Jan. 30, 2024); Nestor Licanto, *Attorney General floats idea of potential take-over of GMH*, KUAM News (Jan. 31, 2024); Troy Torres, *Doctors blow whistle about GMH, AG now investigating possible criminal conduct*, Kandit News (Jan. 20, 2024); John O'Connor, *AG's office investigating alleged dangerous conditions at hospital*, The Guam Daily Post (Jan. 31, 2024)). GMHA argues that an action seeking a federal receivership is not criminal, but is expressly a federal and civil remedy pursuant to Fed. R. Civ. P. 67, and thus improper for consideration by a Guam grand jury, whose inquiries are limited only to felonies and related misdemeanors that are triable by the Superior Court of Guam. Mot., at 6.

GMHA further argues that the subpoena is an overbroad fishing expedition on the part of the OAG, seeking, *inter alia*, procurement information regarding "lacking medications, medical supplies, and equipment," to which GMHA argues that it could not know what the OAG alleged to be lacking or if that list includes items GMHA does not regularly carry. GMHA added that it would not have procurement contracts for items that it allegedly lacks. GMHA also asserts that the subpoena's request for "all documents regarding concerns and complaints from GMHA employees and patients regarding Mold exposure, safety concerns, pest control, and inadequate infrastructure and resources" constitutes an attempt to obtain patient safety work product. GMHA argues that patient safety work product is privileged from disclosure under federal law 42 CFR § 3.204(a), and that if the hospital produces such information, it would be violating the above statute and heavily fined.

In the Opposition, the OAG argues that the Court does not have subject matter jurisdiction to hear GMHA's claim because GMHA has not demonstrated standing to challenge the grand jury subpoena, noting that "[w]hen a party lacks standing, the court is without subject matter jurisdiction to hear the claim." Opp., at 2 (citing *GMHA v. Superior Ct.*, 2012 Guam 17 ¶ 8). The OAG argues that GMH has not demonstrated injury in fact, a key element required to demonstrate standing under the common law.

The OAG further argues that GMHA improperly conflates the grand jury with the OAG, stating that, while AAG Harley may have signed the subpoena, it was also executed by the Foreperson of the Grand Jury "despite the fact that under [8 GCA § 75.45(b)], the AAG was empowered to unilaterally issue the subpoena." Opp., at 6. The OAG argues that the Foreperson's execution of the subpoena demonstrates that the grand jury independently found GMHA to be worth investigating.

Finally, the OAG asserts that, pursuant to *People v. San Nicolas*, "the grand jury can investigate merely on the suspicion that the law is being violated, or even because it wants assurance that it is not." 2016 Guam 21 ¶ 15, n.7 (citing *U.S. v. Williams*, 504 U.S. 36, 48 (1992). The OAG argues that, despite GMHA's reference to AG Moylan's statements regarding federal receivership, this matter does not implicate receivership or any civil remedy, but involves a grand jury that seeks to investigate potential violations of criminal codes by GMHA.

As GMHA acknowledges, a motion to quash a grand jury subpoena carries with it a heavy burden, and a motion to quash must be denied unless "there is no reasonable possibility the subpoenaed materials will produce information relevant to the grand jury's investigation." Mot. to Quash, at 4 (quoting *In re Grand Jury Subpoena dated August 14, 2019*, 964 F.3d 768 (8th Cir. 2000)). As GMHA also acknowledges, the party seeking to quash such a subpoena must present particularized proof of an improper purpose in order to overcome the presumption of propriety on behalf of the grand jury. *Id.* (citing *In re Grand Jury Proceedings*, 971 F.3d 40 (2d Cir. 2020).

Upon review, the Court finds that GMHA is simply unable to meet that heavy burden of proof. While the statements of the OAG have been submitted by GMHA as evidence of improper motive, the Court does not find the statements to be the particularized proof that these circumstances warrant, but circumstantial evidence that the Court cannot draw a definitive conclusion from. Given the weight of the grand jury's subpoena power, the Court cannot subvert that power based on its own presumptions but requires concrete proof, and thus the Court **DENIES** the Motion to Quash.

**B. The Court finds that GMHA does not enjoy sovereign immunity.**

GMHA argues that sovereign immunity limits the grand jury's power to subpoena government agencies without an express waiver by the Legislature. GMHA asserts that, under Guam law, the government of Guam enjoys broad sovereign immunity, and this immunity extends to the instrumentalities or agencies of the government. Mot., at 8-9 (citing *Guam Fed'n of Tchrs. ex rel Rector v. Perez,* 2005 Guam 25 ¶ 18; *Bautista v. Agustin,* 2015 Guam 23 ¶ 18.

In opposition, the OAG argues that GMHA is not entitled to shield itself from a grand jury subpoena through reliance on sovereign immunity. The OAG asserts that, pursuant to 10 GCA §§ 80105.1(a) and (c), the Board may be found liable for the negligence of any hospital employee or officer if the Board was aware that said employee or officer was incompetent or retained that person after becoming aware of their incompetence, and the Board may be found liable as fiduciaries in the execution of their duties. The OAG further argues that the sovereign immunity clause of the Organic Act of Guam does not include immunity from grand jury subpoenas, and that any potential criminal actions found would be outside the governmental authority of GMHA, meaning sovereign immunity does not apply to those actions. Opp., at 9-10.

The Guam Supreme Court has held that the doctrine of sovereign immunity implicates the Court's subject matter jurisdiction. *Bautista v. Agustin,* 2015 Guam 23 ¶ 16. Sovereign immunity can be waived only by duly enacted legislation, and absent such legislation, the Government of Guam cannot be sued. *Guam Police Dept. v. Super. Ct. of Guam,* 2011 Guam 8 ¶ 7. The Supreme

Court has identified the two most common sources of a waiver of sovereign immunity as (1) the Government Claims Act, and (2) statutes that grant the right to sue and be sued. *Bautista*, 2015 Guam 23 ¶ 32. Pursuant to the Government Claims Act, the Government may only waive immunity from suit for: (1) all expenses incurred in reliance upon a contract to which the Government of Guam is a party; and (2) for claims in tort, arising from the negligent acts of its employees acting for and at the direction of the government of Guam, even though occurring in an activity in which private person do not engage. 5 GCA § 6105. However, the Supreme Court has found that the Guam Legislature can waive the sovereign immunity of a public entity by granting it the right to sue or be sued in its own corporate name. *Bautista*, 2015 Guam 23 ¶ 28. The Supreme Court has further found that there is no precedent which limits the Guam Legislature's ability to waive sovereign immunity only to those claims lying in tort or contract. *San Agustin v. Mansapit-Shimizu,* 2020 Guam 25 ¶ 29-30. Pursuant to 10 GCA § 801(i), GMHA has been so empowered to sue or be sued in its own name.

Accordingly, the Court finds that GMHA does not enjoy sovereign immunity from a valid grand jury subpoena.

**C. The grand jury subpoena is not facially defective.**

GMHA further argues that the grand jury subpoena is facially defective because (1) it was only signed by AAG Harley and the foreperson of the grand jury, and (2) the grand jury subpoena was issued by a Tuesday grand jury on January 30, 2024, to appear before a Thursday grand jury on February 15, 2024.

First, GMHA argues that a grand jury subpoena may only be signed by the Attorney General, or, upon request of the grand jury, by any judge of the Superior Court. Mot. to Quash, at 15-16 (citing 8 GCA § 75.45). In the opposition, the OAG argues that AAG Harley was authorized to execute the subpoena because, pursuant to 5 GCA § 30109(b), either the Attorney General himself, a deputy attorney general, or an assistant attorney general may, *inter alia*, conduct grand jury proceedings.

In the reply, GMHA argues that, while AG Moylan may act through a deputy or assistant in conducting grand jury proceedings, the grand jury subpoena power is limited to AG Moylan personally or a judge of the Superior Court. GMHA argues that, because 8 GCA § 75.45 expressly mentions the Attorney General and Superior Court judges, and fails to mention assistant attorney generals, then the canon of *expressio unius est exclusio alterius* dictates that the Legislature only intended the statute to apply to the Attorney General and Superior Court judges.

The Court does not agree with GMHA's interpretation. While the Court does find that the *expressio unius* doctrine applies, there is no express indication whether the statute indicates the Attorney General in the singular, or in the official capacity encompassing his office. Upon review of the duties of the Attorney General, there is no statutory duty afforded to the Attorney General that is not also afforded to a deputy or assistant. *See* 5 GCA § 30109. The Court finds that AAG Harley, when ordered to do so by the Attorney General, is effectively an extension of the Attorney General in all his capacities, including the issuance of grand jury subpoenas.

Second, GMHA argues that, because the grand jury subpoena issued by a Tuesday jury was for an appearance before the Thursday grand jury, the subpoena is defective because one grand jury does not have the power to act for another grand jury. Mot. to Quash, at 16 (citing *In re Grand Jury Proceeding*, 971 F.3d 40, 50 (2d Cir. 2020) (holding that each new grand jury must issue its own subpoena).

In the opposition, the OAG argues that *In re Grand Jury Proceeding* should not be persuasive in this case because it "seemed to involve the need for a newly empaneled Grand Jury to re-issue a subpoena issued by the previous, adjourned, Grand Jury," and "does not appear to address the present situation of concurrent Grand Juries issuing subpoenas and receiving testimony." The OAG argues that, to the extent that this presents an issue, it is likely endemic to the Judiciary's entire grand jury system and not isolated to this case, and is also a harmless error which can be easily remedied by rescheduling so that the appearance is before the issuing grand jury.

The Court agrees that this is a *de minimis* issue and can be remedied through rescheduling. Accordingly, the Court finds that, to the extent that the subpoena is defective at all, the error is a harmless one and not sufficient to outweigh the grand jury's subpoena authority.

Finally, regarding the conflict alleged between the OAG and GMHA, the Court does not find it material to this decision, but a symptom of a much larger issue still in dispute and beyond the scope of these particular motions. Accordingly, the Court will refrain from taking them under consideration at this point in the proceedings.

## II.    Motion to Direct a Witness to Appear

The OAG argues for the Court to issue an Order directing the GMHA Custodian of Records to appear before the grand jury and furnish "[a]ll documents related to the contract between Medhealth Solutions and [GMHA]" which includes, but is not limited to:

- The original contract and all amendments;
- All correspondence between Medhealth Solutions and GMHA;
- All correspondence from and to attorney Jeremiah Luther regarding Medhealth Solutions;
- All correspondence from and to the OAG regarding Medhealth Solutions;
- All invoices and receipts related to the contract;
- All reports and other deliverables submitted by Medhealth Solutions and GMHA regarding the Medhealth Solutions' contract; and
- All records related to the performance of said contracts.

Mot. to Direct, at 2. The Motion further states that "[GMHA], by and though[sic] counsel, filed its Motion to Quash the production of the requested documentation as described in the Grand Jury Subpoena duces Tecum of January 30, 2024," and that the OAG requests, in addition to the enforcement of the January 30, 2024 subpoena, that "for each day of noncompliance with the January 30, 2024 Grand Jury Subpoena Duces Tecum, that [GMHA] be assessed as a sanction $1,000 for each day of noncompliance, plus reasonable attorneys' fees." Mot. to Direct, at 3-4. Finally, the OAG requests that the Court "enter an order directing Ms. ROSITA T. FEJERAN to furnish before and to the Grand Jury of Guam the records, documents and papers, hereinbefore described." *Id.* at 4.

In its Response, GMHA argues that the Motion to Direct riddled with errors that render it facially defective. GMHA asserts, *inter alia*, that the OAG did not serve a grand jury subpoena covering the topics for which he seeks to compel testimony in the Motion to Direct, that the person the OAG seeks to direct is not the GMHA Custodian of Records or a GMHA employee at all, that Jeremiah Luther and the Attorney General acted as legal counsel for GMHA during the Medhealth procurement and that the communications between them and GMHA is thus covered by attorney-client privilege, and that the motion requests enforcement of a different time frame than the time frame described in the January 30, 2024 subpoena.

At the May 15, 2024 hearing, when asked about the request to subpoena "Rosita T. Fejeran," the OAG stated that it was a typo, but did not address any of the other inconsistencies in the Motion to Direct. Further, the OAG did not file a reply disputing any of the points in GMHA's opposition.

Upon review of the record, and the arguments, the Court **DENIES** the Motion to Direct, on the grounds that it has not been filed in accordance with any preceding grand jury subpoena, and that it seeks facts outside the scope of this litigation from a person unrelated to this matter.

In regards to the $1,000 per day sanction and request for attorney's fees that the OAG seeks to impose on GMHA, the Court also denies the request. The OAG cites to the Local Rules of Guam GR 2.1, in support of its request, the Court denies the request because the Motion to Quash is a valid response to the grand jury subpoena, and is thus neither a contemptuous nor intentional violation implicating the provisions of GR 2.1.

///

//

/

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Motion to Quash and **DENIES** the Motion to Direct.

**IT IS SO ORDERED** _____JUL 2 6 2024_____.


**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam